UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                       :
UNITED STATES OF AMERICA               :
                                       :
        -v-                            :        06 Cr. 600 (DLC)
                                       :
BASHI MUSE, et al.,                    :           OPINION
                                       :
            Defendants.                :
                                       :
------------------------------------- X


Appearances:

For United States of America:

Daniel Lawrence Stein
Guruanjan Sahni
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

For the Defendants:

Neil B. Checkman
Counsel to Defendant Abdulahi Hussein
111 Broadway, Suite 1305
New York, New York 10006

Sam A. Schmidt
Counsel to Defendant Bashir Ahmed
111 Broadway, Suite 1305
New York, New York 10006


        The defendants in this criminal case moved to compel the

Government to provide discovery pursuant to Rule 16,

Fed.R.Crim.P., regarding the expert examination of the vegetable

matter which Government chemists have determined contained the

Schedule I controlled substance cathinone.  This Opinion describes the history of that motion practice, which culminated in the defendants' abandoning their effort to obtain further discovery in light of the Government's substantial production of materials associated with the testing done by Government chemists.

The forty-four defendants in this prosecution principally face or faced conspiracy charges arising from the alleged importation and distribution of cathinone, a Schedule I controlled substance found in the khat plant, which is grown and harvested in the Horn of Africa.  See United States v. Muse, 2007 WL 391563 (DLC)(S.D.N.Y. Jan. 30, 2007).  Cathinone quickly degrades after the khat plant is harvested and may be present in only minute quantities by the time the plant material arrives in and is distributed within the United States.  As the Court has already ruled, the Government has the burden of proving at trial with respect to any conspiracy charge, that a conspiracy to distribute some controlled substance existed as charged in the Indictment, and that a defendant knowingly and intentionally agreed to participate in the conspiracy.  Id. at *3.  The Government is not required to prove that the defendant knew the exact nature of the controlled substance which it was the aim of the conspirators to distribute.  Id. at *4 (citation omitted).

Through letters sent to the Government from September 27, 2006 through January 9, 2007, the defendants demanded discovery regarding the chemical testing of seized khat plants.  Following a series of conferences with the Government regarding their demands, and dissatisfied with the Government's refusal to provide some of the information that they had requested, the defendants filed their motion to compel on February 7.

With its opposition to this motion, and to demonstrate the extent to which it has already complied with its disclosure obligations, the Government submitted the documents it had produced in discovery for one of the sixty-six seizures it made during the investigation of this case.  The thirty pages of discovery material generated by this single examination included the laboratory report, the Drug Enforcement Agency ("DEA") Form 7 chain of custody report, chemist worksheets, a "method information" report, and print-outs of the data and graphs generated by the tests the chemists conducted.  Altogether, the Government produced over 3,400 pages of materials concerning the seized khat and the testing of the khat.  These materials reflected all of the tests performed by the DEA chemists, the test results, and each chemist's notations of the readings obtained during the testing.

The Government also submitted the February 20[1] disclosure it made to the defendants pursuant to Rule 16(a)(1)(G), Fed.R.Crim.P., setting forth a summary of the opinions of three DEA forensic chemists.  These chemists conducted the sixty-six laboratory examinations of the khat.[2]  One witness alone, Senior Forensic Chemist George, conducted sixty of the examinations. A three-and-a-half page letter described in detail the methodology the three experts used to test the khat for the presence of cathinone.  The experts found that cathinone was present in all but one of the samples.[3]

The Government refused, however, to provide documents that describe the general operating procedures used at DEA laboratories, any research materials it may have accumulated regarding khat generally, or information generally about its use and maintenance of its testing equipment.  It represented that samples of the khat tested by the Government remained available for testing by the defendants, but that no defendant had

---

[1] The February 20 disclosure of expert testimony was more than three months in advance of the trial, which began on June 4.

[2] Closer to trial, the Government gave expert notice for two chemists from the New Jersey State Police, and the Chief of the Drug and Chemical Control Unit within the DEA laboratory.

[3] In one instance, one of the tests indicated that cathinone was present, but the result was not confirmed through a second test and the DEA requires confirmation to support an expert opinion regarding the presence of the controlled substance.

requested an opportunity to conduct any independent testing of the seized khat.[4]

On February 27, the attorney to whom all of the defendants had delegated responsibility for handling the expert issues accepted the Government's offer to have the preserved khat samples reanalyzed by the defense.  On March 1, the defendants requested that the Court not decide their motion to compel because the Government's production had satisfied some of their requests and might render "much of the remaining requests unnecessary."  It advised, however, that there might be the need for additional "limited" discovery based on the examination of the materials produced by the Government.

During March, the defendants made additional demands on the Government, which were rejected by the Government in a letter of April 6.  In response, defense counsel indicated to the Government on April 6 that the defendants would renew the motion to compel.

On May 4, the defendants notified the Court that they were renewing the motion to compel and also moved to preclude the testimony from the DEA chemists who had tested the khat and found evidence of cathinone.  Their application was supported by an affidavit from defense expert Dr. Horace G. Cutler

---

[4] The DEA froze samples in order to preserve their chemical integrity.

("Cutler"), a botanist whom the defendants had retained in December 2006.  This was the first time that the defendants attempted to explain to the Court the reasons behind their broad-ranging discovery requests.  Cutler contends that cathinone may have been detected by the DEA chemists because the cathine in the leaves may have been converted into cathinone through oxidation that occurred during the DEA testing process. Dr. Cutler did not conduct any experiments to confirm his hypothesis.  The motion requested as an alternative to preclusion that a hearing be held and the Government required to forward "all of the requested discovery material" to the defendants.  The defendants sought all of the material demanded through their February 7 motion to compel, and to obtain additional materials from the Government identified in requests of March 2 and 13, and in Dr. Cutler's affidavit submitted in support of the motion to preclude.

A scheduling Order of May 9 allowed the Government to oppose and the defendants to reply to the May 4 applications. The Government opposed both motions.  Among other things, it pointed to the delay in renewing the motion to compel, and the defendants' failure to narrow or revise their requests despite the substantial intervening productions of material by the Government.  It argued that many if not all of the open requests were for narrative information, and not documents, and therefore

were not subject to the Rule 16(a)(1)(E)(I) "materiality" analysis.

At a final pretrial conference on May 18, defense counsel asked for and received a few more days to submit a reply on the motions to compel and preclude.  Observing that it could not rule until the briefing was complete, the Court nonetheless shared its preliminary views.  While disinclined to grant the defendants' "blunderbuss" discovery motion, it encouraged the defendants to request from the Government a few discrete, well-identified items.  If the parties were unable to reach agreement as to the production of those items, the defendants were invited to write a short letter to bring the specific dispute to the Court's attention.

In a reply of May 20, the defendants continued to press the motion to preclude, but did not argue that the motion to compel should be granted.  Notably, they did not attempt to identify which of their many requests were no longer relevant in light of the Government's extensive productions, and did not respond to the Government's argument about the limits placed by Rule 16(a)(1)(E)(I).  Instead, they indicated that they would make a few discrete requests of the Government.  The defendants also explained that they did not conduct their own independent testing of the preserved khat because a Schedule 1 DEA license is required to handle cathinone, and the expert would need fresh

khat and a radioisotope to conduct the testing necessary to confirm their expert's hypothesis.[5]

The defendants never renewed any request to compel discovery.  The Court denied the defendants' motion to preclude, which was in any event largely based on their confusion of two testing methodologies and at best raised issues that should and could be addressed through cross-examination of the Government's experts at trial.


Dated:     New York, New York
           June 19, 2007


                                    _____
                                             DENISE COTE
                               United States District Judge


---

[5]The defendants have not made a persuasive showing that the barriers to conducting their own tests of khat could not have been surmounted.  They have not shown that they engaged in discussions with the Government in an effort to overcome these problems.  Moreover, they did not apply to the Court for either the funding or the permission to handle khat.  While the defendants have no obligation to undertake any tests, their failure to do so is properly considered in an application for discovery that significantly exceeds the parameters of Rule 16.